UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CRAIG McCULLEN,

                Petitioner,

     -vs-


JOHN LEMPKE,


             Respondent.

_____

**DECISION AND ORDER**
**No. 10-CV-0389T**

## I.   Introduction

*Pro se* Petitioner Craig McCullen ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered August 21, 2007, in New York State, County Court, Erie County (Hon. Shirley Troutman), convicting him, after a jury trial, of Grand Larceny in the Fourth Degree (N.Y. Penal Law ("Penal Law") §§ 155.30 [4], 20.00), Criminal Possession of Stolen Property in the Fourth Degree (Penal Law former §§ 165.45 [2], 20.00), Criminal Possession of Stolen Property in the Fifth Degree (Penal Law §§ 165.40, 20.00), and Possession of Burglar's Tools (Penal Law § 140.35).  Petitioner was sentenced as a persistent felony offender to concurrent terms of fifteen years to life under counts one and two of the indictment, and concurrent terms of one year imprisonment under counts three and four of the indictment.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

Under Indictment No. 01360-2006, Petitioner was charged with one count each of Grand Larceny in the Fourth Degree, Criminal Possession of Stolen Property in the Fourth Degree, Criminal Possession of Stolen Property in the Fifth Degree, and Possession of Burglar's Tools.  The charges arose from an incident that occurred on May 24, 2006 in the City of Buffalo, New York, wherein Petitioner stole a purse from a parked vehicle.

At 9:15 a.m. on May 24, 2006, Michele Korb ("Korb" or "the victim") drove a company truck to 26 Urban Street.  Korb, who was a secretary for an asbestos abatement demolition company, had gone to that location to post occupancy notices on a building.  When she got out of her truck to post the notices, she left her purse and cell phone behind.  She did not lock the truck.  After posting the notices and while on her way back to her truck, Korb saw a male, whom she later identified as Petitioner, walking away from her truck.  Petitioner wore a black, hooded sweatshirt and a black cap. The hood of Petitioner's sweatshirt was down, and Korb could see that Petitioner was African American.  Trial Trans. [T.T.] 298-304.

Korb went to her truck and discovered that her purse, which contained a black wallet, was gone.  Inside her purse, Korb kept her credit and debit cards, a small amount of cash, and receipts.

No damage had been done to the truck.  The passenger side door was ajar.  T.T. 305, 309.

Korb grabbed her cell phone, which had not be taken, and called 911.  Korb watched Petitioner as he walked toward a black Jeep, which was "driving very slow" down Urban Street.  Korb noticed that Petitioner was wearing black jeans and black sneakers.  Petitioner entered the Jeep through the driver's side door and the Jeep drove away.  T.T. 310-314.

Buffalo Police Officer Thomas Whelan arrived at 26 Urban Street approximately five minutes later.  On his way to the scene, Officer Whelan had seen a dark Jeep with a cracked windshield pass him.  Officer Whelan spoke with Korb and put out a description of Petitioner and the Jeep.  Officer Whelan noticed that the passenger side door of Korb's truck was ajar.  Shortly thereafter, Officer Whelan received a call that the Jeep had been stopped on Lathrop Street near Broadway.  Officer Whelan and Korb followed to that location.  T.T. 316, 359, 361, 364.

Buffalo Police Officer Arrie Moore, who was on patrol that morning, heard the description put out by Officer Whelan and spotted the black Jeep at Lathrop and Broadway adjacent to an automotive store.  Officer Moore stopped the Jeep and waited for back-up.  The vehicle had four occupants.  Petitioner was in the front passenger seat.  T.T. 390-393, 399.

Buffalo Police Officer Alphonso Wright arrived at Lathrop and Broadway shortly after Officer Moore.  Officer Wright identified Daniel Lewandowski ("Lewandowski") as the driver;  Shantelle Lascelle ("Lascelle") was seated behind Lewandowski in the back seat, and George Madison ("Madison") was seated behind Petitioner in the back seat.  Officer Wright removed Lewandowski from the Jeep first.  A crack pipe was discovered in his pocket and money was discovered in his hand.  Next, Officer Wright removed Lascelle from the Jeep and discovered a tan purse in her lap.  Officer Wright also discovered a black wallet on the floor of the Jeep.  T.T. 510-514.

Buffalo Police Officer Dell Storey also responded to Lathrop and Broadway that morning.  Officer Wright gave Officer Storey the tan purse to show to Korb.  Officer Storey discovered debit cards on the floor of the Jeep along with some receipts.  Korb identified the purse, the debit cards, and the receipts as her own.  T.T. 323-325, 406-411.

At Lathrop and Broadway, Korb was asked by Officer Whelan if she recognized Petitioner or Madison.  Korb identified Petitioner based upon his clothing and build.  Petitioner wore the same black cap, sweatshirt, jeans, and sneakers as the individual she saw walking away from her vehicle.  Petitioner was broad-shouldered and tall.  Madison wore a t-shirt and was thin.  T.T. 320-322, 328.

Buffalo Police Officer Arthur Collins, who had also responded to Lathrop and Broadway, removed Petitioner from the Jeep and conducted a pat-down.  Officer Collins discovered two screwdrivers in Petitioner's pants pocket.  Petitioner told Officer Collins that he had not used the screwdrivers to gain access to the truck, and that there was no damage to the doors.  T.T. 519, 520-526.

At trial, Lewandowski and Lascelle testified that they had been together the morning of May 24, 2006.  They had been using crack cocaine for over a day together and had run out.  In an effort to acquire money to buy more crack cocaine, they went for a drive in Lewandowski's black Jeep, which had a cracked windshield. They picked up Madison, Lewandowski's friend, and, at Madison's request, had also picked up Petitioner.  The four individuals agreed to look for vehicles to steal things from.  Lewandowski drove to Urban Street where they spotted a truck.  According to Lewandowski, Petitioner stated, "this is exactly what I was looking for."  Petitioner got out of the Jeep and walked towards the victim's truck.  Lascelle testified that she saw Petitioner at the truck, but was reluctant to watch.  According to Lascelle, Petitioner returned to the Jeep a short while later, entering through the front passenger side of the Jeep carrying a purse. Once inside the Jeep, Petitioner rifled through the purse, removing from it a black wallet which he then passed around to the other

individuals in the vehicle. T.T. 422-428, 432, 467, 469, 467, 477-480.

Prior to trial, a <u>Huntley</u> hearing was conducted, at the close of which the trial court denied suppression of Petitioner's statements to police. Hr'g Mins. [H.M.] of 01/19/07 31.

A <u>Wade</u> hearing was also conducted during the trial. At the close of this hearing, the trial court denied Petitioner's motion to suppress identification evidence. T.T. 282-296.

After a jury trial before the Hon. Shirley Troutman, Petitioner was found guilty as charged. T.T. 651-652. He was subsequently sentenced, as a persistent felony offender, to concurrent terms of fifteen years to life under counts one and two of the indictment, and to a one year term of imprisonment each under counts three and four of the indictment. All of the sentences were ordered to run concurrent to one another. Sentencing Mins. [S.M.] 2, 9-10.

Petitioner appealed his judgment of conviction on the following grounds: (1) the trial court erred in failing to suppress identification evidence; (2) the verdict was against the weight of the evidence; (3) the trial court erred in admitting evidence of uncharged crimes and prior bad acts; (4) the sentencing of Petitioner as a persistent felony offender violated his right to a trial by jury; (5) that he was unlawfully ordered to pay a DNA databank fee; (6) ineffective assistance of trial counsel; and (7) prosecutorial misconduct. <u>See</u> Resp't Ex. B. On June 12, 2009,

the Appellate Division, Fourth Department unanimously modified the judgment by vacating the DNA databank fee, and otherwise affirmed. People v. McCullen, 63 A.D.3d 1708 (4th Dep't 2009); lv. denied, 13 N.Y.3d 747 (2009). See Resp't Exs. B, C.

On or about January 8, 2010, Petitioner filed a motion to vacate his judgment of conviction, pursuant to N.Y. Crim. Proc. Law ("CPL") § 440.10, on the basis of newly discovered evidence and ineffective assistance of trial counsel. The Erie County Court denied that motion, and leave to appeal was denied.[1] See Resp't Ex. D; Dkt. No. 15.

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) the trial court impermissibly permitted the victim and arresting officer to testify to his out-of-court identification; (2) the verdict was against the weight of the evidence; (3) that he was denied his right to a fair trial when the trial court received evidence of prior bad acts; (4) that his adjudication as a persistent felony offender violates his right to a jury trial; and (5) that the Erie County Court improperly denied his CPL § 440.10 motion, which was brought on the basis of newly discovered evidence and ineffective assistance of counsel. See

_____

[1]

At the time Petitioner filed his habeas corpus petition, his motion for leave to appeal was pending in the Appellate Division, Fourth Department. On September 1, 2010, Petitioner advised the Court, by way of cover letter with attached Order from the Appellate Division, Fourth Department (dated 08/05/10), that his motion for leave to appeal was denied. See Dkt. No. 15.

Pet. ¶ 13, Points I-V (Dkt. No. 1); Reply (Dkt. No. 12); Supplemental Letters (Dkt. Nos. 13, 14).

## III. General Principles Applicable to Habeas Review

### A.   The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan

v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state

court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.   Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A);  see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999);  accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995).  "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

**C.   The Adequate and Independent State Ground Doctrine**

A procedural default generally bars a federal court from reviewing the merits of a habeas claim. Wainwright v. Sykes, 433 U.S. 72 (1977).  Federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991));  accord Jones v. Stinson,

229 F.3d 112, 117 (2d Cir. 2000).  A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995) (quoting Harris v. Reed, 489 U.S. 255, 262 (1989)).  A state procedural rule will be adequate to preclude habeas review if it is "firmly established and regularly followed," unless the state rule is "exorbitant." Lee v. Kemna, 534 U.S. 362, 376 (2002) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).

A federal court may review a claim, notwithstanding the petitioner's default, if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." Coleman, 501 U.S. at 750;  see also Levine, 44 F.3d at 126; Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991). A petitioner may establish cause by pointing to "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986);  accord Coleman, 501 U.S. at 753.  A petitioner suffers actual prejudice if the outcome of the case would likely have been different had the alleged constitutional violation not occurred. See Reed v. Ross, 468 U.S. 1, 12 (1984). Alternatively, even if the petitioner is unable to show cause and prejudice, the court may consider the claim if he can demonstrate

that failure to do so will result in a "fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750.

## IV.  Petitioner's Claims

### 1.  Verdict Against the Weight of the Evidence

Petitioner contends, as he did on direct appeal, that the verdict was against the weight of the evidence. <u>See</u> Pet. ¶ 13, Point Two; Reply, Point Two.  The Appellate Division, Fourth Department rejected this claim on the merits. <u>See</u> <u>McCullen</u>, 63 A.D.3d at 1710.  As discussed below, this claim is not cognizable on habeas review.

Challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review. <u>See e.g.</u>, <u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir. 1996).  A claim that a verdict was against the weight of the evidence derives from CPL § 470.15 [5] which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." CPL § 470.15 [5].  Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. <u>People v. Bleakley</u>, 69 N.Y.2d 490, 495 (1987).  Since a weight of the evidence claim is purely a matter of state law, it is not

cognizable on habeas review.  See 28 U.S.C. § 2254(a);  Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Accordingly, this claim provides no basis for habeas relief and is dismissed.

## 2.    Sentencing as Persistent Felony Offender in Violation of Right to Trial by Jury

Petitioner argues, as he did on direct appeal, that New York's discretionary persistent felony offender statute (Penal Law § 70.10) violates his constitutional right to a trial by jury as explicated by the Supreme Court in Apprendi v. New Jersey, 500 U.S. 466 (2000) and its progeny.  See Pet. ¶ 13, Point IV; Reply, Point IV; Supplemental Letter (Dkt. No. 13).  The Appellate Division, Fourth Department rejected this claim on the merits.  See McCullen, 63 A.D.3d at 1709.  As discussed below, this claim is meritless.

The Second Circuit recently determined that the New York Court of Appeals reasonably applied clearly established Supreme Court precedent in  holding that Penal Law § 70.10 does not run afoul of the Sixth Amendment's guarantee to a criminal defendant of a trial by jury.  Portalatin v. Graham, 624 F.3d 69, 73, 90-94 (2d Cir. 2010) (en banc), reversing Besser v. Walsh, 601 F.3d 163, 189 (2d Cir. 2010).  Based upon the authority of Portalatin, Petitioner's claim challenging the constitutionality of his sentencing as a persistent felony offender under Penal Law § 70.10 must be denied.

-13-

See <u>Gibson v. Artus</u>, No. 08-1576, 2010 U.S. App. LEXIS 22870, *5-6 (2d Cir. 2010) (unpublished opinion) ("We recently upheld New York's persistent felony offender statute . . . explaining that in the enactment of that statute, 'predicate felonies alone expand the indeterminate sentencing range within which [a] judge has the discretion to operate, and that discretion is cabined only by an assessment of defendant's criminal history.' Under the circumstances, the claim that New York's persistent felony offender statute violated petitioner's right to a jury trial under the Sixth Amendment is without merit.") (quoting <u>Portalatin</u>, 624 F.3d at 94); <u>see e.g.</u>, <u>Perez v. Lempke</u>, 2011 U.S. Dist. LEXIS 75326, No. 10-CV-0303(MAT), *18-10 (W.D.N.Y. July 13, 2011) (finding meritless Petitioner's claim that his sentencing as a persistent felony offender violated Sixth Amendment right to trial by jury based on the authority of <u>Portalatin</u>); <u>Mason v. Duncan</u>, 2011 U.S. Dist. LEXIS 67874, 02 Civ. 5729, *7 (S.D.N.Y. June 23, 2011) ("Because the Second Circuit has affirmed the constitutionality of New York's PFO statute, this Court is bound to find that Mason's sentence is constitutional under <u>Apprendi</u> and its progeny.").

Accordingly, based on the authority of <u>Portalatin</u>, this Court cannot find that the state court's adjudication of this claim unreasonably applied settled Supreme Court law. The claim is therefore dismissed in its entirety.

3.   **Trial Court Erred in Admitting Evidence of Prior Bad Acts**

Petitioner argues, citing <u>People v. Molineux</u>, 168 N.Y.2d 264 (1901), that the trial court erred in admitting the testimony of Lewandowski and Lascelle with respect to statements Petitioner made to them during pre-trial appearances.[2]   <u>See</u> Pet. ¶ 13, Point III; Reply, Point Three.   The Appellate Division, Fourth Department rejected this claim on the merits, finding that "the court properly allowed [Petitioner's] accomplices to testify with respect to statements that he made to them following his arrest inasmuch as those statements constituted evidence of consciousness of guilt." <u>McCullen</u>, 63 A.D.3d at 1709-10 (citation omitted).   As discussed below, this claim provides no basis for habeas relief.

Federal habeas relief generally does not lie for mere errors of state evidentiary law.   <u>See e.g.</u>, <u>Estelle</u>, 502 U.S. at 67-68; <u>see also</u> 28 U.S.C. § 2254(a).   Rather, to warrant habeas relief, an error of state law must have deprived petitioner of a fundamentally fair trial.   <u>Rosario v. Kuhlman</u>, 839 F.2d 918, 924 (2d Cir. 1988) (citing <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294 (1965)).

As a matter of New York state law, evidence that a defendant attempted to procure false testimony is highly probative of a defendants consciousness of guilt and has been routinely admitted.

---

2

The trial court permitted Lewandowski to testify that Petitioner told him, prior to trial, that, "somebody has to take the rap for this case."   T.T. 436. Lascelle was allowed to testify that Petitioner told her, prior to trial, "[n]ot to say anything, that we can beat it if we take it to trial."   T.T. 487.

See <u>People v. Hernandez</u>, 118 A.D.2d 729 (2d Dep't 1986) (holding that admission of evidence of defendant's attempt to procure false testimony from complainant, which evidence was indicative of defendant's consciousness of guilt and was supported "by other proof of truly substantial character," and was thus not prejudicial, was not reversible error) (quoting <u>People v. Leyra</u>, 1 N.Y.2d 199, 208-09 (1956) and citing <u>People v. Shaw</u>, 111 A.D.2d 415 (1985)); <u>People v. DeVivo</u>, 282 A.D.2d 770 (3d Dep't 2001) (Testimony of various witnesses that defendant had threatened them, implored them to testify falsely and/or offered them money to change their testimony did not deny defendant a fair trial in prosecution for burglary, criminal mischief, and perjury; evidence of such conduct was indicative of defendant's consciousness of guilt).

Furthermore, as a matter of federal law, "[e]vidence such as attempted witness or jury tampering is admissible as probative of a defendant's consciousness of guilt." <u>United States v. Perez</u>, 387 F.3d 201, 209 (S.D.N.Y. 2004) (citing <u>United States v. Mickens</u>, 926 F.2d 1323, 1329 (2d Cir. 1991) (Such evidence may be admitted after the court determines that: (1) the evidence is offered for a "purpose other than to prove the defendant's bad character or criminal propensity;" (2) the evidence is relevant under Federal Rules of Evidence 401 and 402; and (3) provides an appropriate limiting instruction to the jury, if one is requested.) (quoting

-16-

United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989)); see also United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988); Huddleston v. United States, 485 U.S. 681, 691-92 (1988); Mealer v. Jones, 573 F. Supp. 675, 678 (S.D.N.Y. 1983) (holding that statements made by murder suspect, after indictment but prior to trial, to crime witness, encouraging witness to testify falsely as to circumstances surrounding crime, constituted separate criminal conduct of suborning perjury and were admissible at murder trial to prove consciousness of guilt, though made in absence of counsel and to witness who was then acting as government agent).

Here, the evidence of Petitioner's attempts to influence the testimony of Lewandowski and Lascelle was properly admitted, as a matter of both state and federal evidentiary law.[3]  As there was no error of state evidentiary law, the Court cannot find that an error of federal constitutional magnitude occurred.  Accordingly, this claim is dismissed.

## 4. Trial Court Erred in Admitting Victim's Out-of-Court-Identification and Arresting Officer's Bolstering Testimony

Petitioner argues that the trial court erred in allowing the victim to testify with respect to her out-of-court identification

---

[3]
Additionally, the Court notes that the trial court also gave a limiting instruction to the jury regarding Petitioner's statements to Lewandowski and Lascelle.  In its final instruction, the trial court judge explained that: "[c]ommon experience teaches that even an innocent person who finds himself or herself under suspicion may resort to conduct which gives the appearance of guilt.  The weight and importance you give the evidence offered to show consciousness of guilt depends on the facts of the case.  Sometimes such evidence is only of slight value, and standing alone, it may never be the basis of a finding of guilt."  T.T. 618.

of Petitioner and that this error was compounded by allowing the arresting officer (Officer Whelan) to impermissibly bolster the victim's out-of-court identification.  <u>See</u> Pet. ¶ 13, Point One; Reply, Point One; Supplemental Letter (Dkt. No. 14).  As discussed below, this claim is not cognizable by this Court on habeas review.

On direct appeal, Petitioner argued that the admission of the victim's out-of-court identification and the arresting officer's confirmatory testimony of the victim's out-of-court identification violated CPL § 60.25, which is a modified codification of the rule against impermissible identification bolstering articulated in <u>People v. Trowbridge</u>, 305 N.Y. 471 (1953).  This claim, which was framed as a state law violation is not cognizable by this Court on habeas review.  <u>See, e.g.</u>, <u>Estelle</u>, 502 U.S. at 68; <u>see</u> <u>also</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990).  "District courts in this circuit have repeatedly held that violations of the bolstering rule do not present a basis for habeas relief."  <u>Robinson v. Conway</u>, 06-CV-859(MAT), 2010 U.S. Dist. LEXIS 12684, *19 (W.D.N.Y. Feb. 12, 2010) (citing <u>Glover v. Burge</u>, 652 F. Supp. 2d 373, 377 (W.D.N.Y. 2009) ("An error of state evidentiary law is not a sufficient predicate for habeas relief, and the overwhelming weight of federal authority in this Circuit holds that 'bolstering' of a prosecution witness' testimony does not state a constitutional claim redressable on federal habeas review.") (citations omitted); <u>Nieves v. Fischer</u>, 03 Civ. 9803 (DC), 2004 U.S. Dist. LEXIS 25921,

*21 (S.D.N.Y. Dec. 28, 2004) ("While the practice of bolstering is prohibited in various states, including New York, it . . . is not sufficiently prejudicial to deprive a defendant of his due process rights to a fair trial.") (internal quotation marks and citations omitted); <u>Snow v. Reid</u>, 619 F. Supp. 579, 582 (S.D.N.Y. 1985) ("The concept of 'bolstering' really has no place as an issue in criminal jurisprudence based on the United States Constitution. It is at most a New York State rule or policy, derived from <u>People v. Trowbridge</u> . . . . Violation of that rule, as is so with regard to many such state court rules, does not rise to a constitutional level.")) (additional citation omitted). Accordingly, Petitioner's claim is dismissed as not cognizable.

## 5.   Ineffective Assistance of Counsel[4]

Petitioner contends, as he did in his CPL § 440.10 motion, that he received ineffective assistance of trial counsel based upon:  (1) counsel's failure to investigate and/or call Madison and Brathwaite as potential defense witnesses;  (2) counsel's failure to cross-examine Officers Collins and Whelan at the <u>Wade</u> hearing and at trial with respect to police-prepared notes purporting to

---

[4]

In Point V of the petition, Petitioner challenges the state court's denial of his CPL § 440.10 motion in which he raised claims of newly discovered evidence and ineffective assistance of counsel.   To the extent Petitioner's newly discovered evidence claim could be construed as a claim of actual innocence and to the extent, if any, Petitioner attempts to raise a stand-alone claim of actual innocence in the instant proceeding, said claim is dismissed as not cognizable. <u>Herrara v. Collins</u>, 506 U.S. 390, 400 (1993) ("[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

indicate that the victim identified Madison rather than Petitioner at the show-up procedure; (3) that counsel filed a "barebones omnibus motion" that did not contain a request for <u>Brady</u>/<u>Rosario</u> material and counsel failed to seek sanctions for delayed disclosure of the aforementioned police-prepared notes; (4) counsel's failure to ascertain the identity of a civilian witness mentioned in the aforementioned police-prepared notes and for moving to preclude all references to that individual instead of requesting a missing witness charge; and (5) counsel's failure to utilize a potential alibi in that police stopped Petitioner at Broadway and Lydell some twenty minutes before the larceny occurred.   The Erie County Court denied portions (2) and (4) of Petitioner's ineffective assistance of counsel claim on a procedural ground.   The Erie County Court denied the remaining portions of Petitioner's ineffective assistance of counsel claim on the merits.   <u>See</u> Resp't Ex. D.   Consequently, as discussed below, Petitioner's ineffective assistance of counsel claim is partially procedurally defaulted and partially meritless.

**(A)   Portions (2) and (4) of Petitioner's Ineffective Assistance of Trial Counsel Claim are Procedurally Defaulted**

Petitioner faults trial counsel for failing to: cross-examine Officers Collins and Whelan at the Wade hearing and at trial with respect to police-prepared notes purporting to indicate that the victim identified Madison rather than Petitioner at the show-up

procedure; and, to ascertain the identity of a civilian witness mentioned in said police-prepared notes and for moving to preclude all references to that indidivual instead of requesting a missing witness charge. <u>See</u> Pet. ¶ 13, Point V; <u>see also</u> Resp't Ex. D. The Erie County Court denied these portions of Petitioner's ineffective assistance of counsel claim on a state procedural ground, pursuant to CPL § 440.10(2)(c), because they were based upon matters of record that Petitioner could have raised on direct appeal, but unjustifiably failed to do so. <u>See</u> Resp't Ex. D.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground that is independent of the federal question and adequate to support the judgment. <u>See</u> <u>Coleman</u>, 501 U.S. at 751 (1991). Here, the state court relied upon CPL § 440.10(2)(c) to deny portions (2) and (4) of Petitioner's ineffective assistance of counsel claim. CPL § 440.10(2)(c) is a state procedural rule that mandates the denial of any CPL § 440.10 motion where the defendant unjustifiably failed to argue a constitutional violation on direct appeal despite a sufficient record. As the Second Circuit has recognized, the state court's invocation of this rule constitutes an adequate and independent state ground barring federal habeas review. <u>See e.g.</u>, <u>Sweet v. Bennett</u>, 353 F.3d 135, 139-40 (2d Cir. 2003); <u>Reyes v. Keane</u>, 118 F.3d 136, 139 (2d Cir. 1997); <u>Aparicio</u>, 269 F.3d at 91; <u>Levine v. Commissioner of Corr. Servs.</u>,

44 F.3d 121, 126 (2d Cir. 1995) (refusing to conduct federal habeas review of ineffective assistance of counsel claim where New York's appellate court found claim to be procedurally barred under CPL § 440.10(2)(c).

This Court, however, may reach the merits of Petitioner's claim, despite the procedural default, if he can demonstrate cause for the default and prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750. Petitioner makes no showing of cause and prejudice to overcome the procedural default. Moreover, he has not made a colorable showing of actual innocence so as to warrant invocation of the "miscarriage of justice exception."[5]   See McCleskey v. Zant, 499 U.S. 467, 495 (1991). Accordingly, portions (2) and (4) of Petitioner's ineffective assistance of trial counsel claim are dismissed as procedurally defaulted.

---

[5]
    As discussed at footnote 3, Petitioner appears to advance a claim of actual innocence in the instant proceeding. See Pet. ¶ 13, Point V.  To make the requisite showing of actual innocence to overcome the procedural default, Petitioner must produce "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial" and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup v. Delo, 513 U.S. 298, 324, 327 (1995).  In his pleadings, Petitioner points to the information contained in the affidavits co-defendants Madison and Brathwaite swore to on January 16, 2007 and December 18, 2006. See Resp't Ex. D.  However, as the Erie County Court correctly determined in denying Petitioner's CPL § 440.10 motion, these affidavits are not new evidence as they are dated prior to Petitioner's trial, and, by Petitioner's own admissions, were provided to trial counsel in advance of the trial. See Resp't Ex. D. Moreover, and in any event, the information contained in these affidavits casts little to no doubt on Petitioner's conviction (see merits-based discussion of these affidavits in the context of Petitioner's ineffective assistance of counsel claim below).

**(B)  The Remaining Portions of Petitioner's Ineffective Assistance of Trial Counsel Claim are Meritless**

Petitioner also faults trial counsel for:  failing to investigate and/or call Madison and Brathwaite as potential defense witnesses;  filing a "barebones omnibus motion" that did not contain a request for Brady/Rosario material and counsel for failing to seek sanctions for delayed disclosure of the aforementioned police-prepared notes;  and failing to utilize a potential alibi.  See Pet. ¶ 13, Point V; see also Resp't Ex. D. The Erie County Court denied these remaining portions of Petitioner's ineffective assistance of counsel claim on the merits. See Resp't Ex. D.

To demonstrate a violation of his Sixth Amendment right to the effective assistance of counsel, a petitioner must show that his attorney's representation was deficient in light of prevailing professional norms and that prejudice inured to him as a result of that deficient performance.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To satisfy the first prong, counsel's conduct must have "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just result[.]"  Id. at 686.  As to the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional" performance, the result of the trial would have been different.  Id. at 694.  Petitioner cannot meet this standard.

With respect to Petitioner's allegation that he received ineffective assistance of counsel because counsel failed to investigate and/or call Madison and Brathwaite as potential defense witnesses, such a claim is meritless. Habeas courts are discouraged from second-guessing counsel's defense strategy, and "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.), cert. denied, 484 U.S. 957 (1987). To support this claim, Petitioner points to the affidavits of Madison and Brathwaite (mentioned at footnote 4 above), which are dated prior to Petitioner's trial and, by Petitioner's own admissions, were provided to his attorney in advance of his trial. According to Madison's affidavit, it was Lewandowski who took the victim's purse from the victim's truck. According to Madison, Petitioner entered the Jeep after Lewandowski stole the purse and had no knowledge of the larceny. See Resp't Ex. D. Similarly, Brathwaite's afffidavit memorializes jailhouse admissions to him by Lewandowski to the effect that Lewandowski stole the victim's purse from the victim's vehicle, that Petitioner had no involvement in the larceny, and that Lewandowski planned to "blame" Petitioner for the crime. See Resp't Ex. D. Since, as the Erie County Court correctly determined in denying Petitioner's CPL § 440.10 motion, Madison's version of

-24-

events, as they are set forth in his affidavit, contradict the trial testimony of Lewandowski and Lascelle, counsel could have reasonably concluded that the jury would have found said version of events incredible.   To this extent, it was not unreasonable for defense counsel not to have called Madison as a witness.   Further, the record before this Court reveals that although defense counsel did not question Lewandowski at trial about his alleged conversation with Brathwaite, defense counsel did thoroughly cross-examine Lewandowski regarding his role in the crime and utilized Lewandowski's plea colloquy to suggest that Lewandowski had actually taken the purse from the victim's truck.   To this extent, the issues raised in Brathwaite's affidavit were sufficiently addressed at trial and Petitioner cannot therefore demonstrate that he was prejudiced by counsel's alleged failure to call Brathwaite as a defense witness.

Next, with respect to Petitioner's allegation that he received ineffective assistance of counsel because counsel filed a "barebones omnibus motion" that did not contain a request for Brady/Rosario material and because counsel failed to seek sanctions for the delayed disclosure of the police-prepared notes purporting to indicate that the victim identified Madison rather than Petitioner at the show-up procedure, such claim is also meritless. Although the record before this Court reflects that trial counsel's pre-trial omnibus motion did not contain a specific request for

-25-

Brady/Rosario material, Petitioner concedes that the police-notes were eventually turned over to the defense during the trial. See Resp't Ex. A. He has failed to show, however, how or in what way he was prejudiced by the delayed disclosure of the police-notes (assuming they were even Brady/Rosario material). Furthermore, the record before this Court reflects that counsel made appropriate pre-trial motions, including applications to suppress Petitioner's statement to police and the show-up identification by the victim; he thoroughly cross-examined the People's witnesses at trial and raised every conceivable challenge to the victim's ability to observe the individual near her truck; and, he attacked the show-up identification, eliciting testimony from the victim that she was not certain that Petitioner was the same individual she walking away from her vehicle. Thus, Petitioner cannot demonstrate that he was prejudiced by counsel's alleged errors in this respect.

Finally, with respect to Petitioner's contention that he received ineffective assistance of trial counsel because counsel failed to utilize a potential alibi in that police stopped Petitioner at Broadway and Lydell approximately twenty minutes before the larceny occurred, such claim is also meritless. Given the facts and circumstances of this case, counsel could have reasonably concluded that an alibi defense would not have been successful. Additionally, counsel could have reasonably determined that evidence that Petitioner had been stopped as a "suspicius

person" shortly before the instant crime would have been more prejudicial than beneficial to his case.  To this extent it was not unreasonable for defense counsel to forego pursuit of an alibi defense, nor can he demonstrate that counsel's failure to do so prejudiced his defense.

In sum, Petitioner has failed to demonstrate that his attorney's representation was constitutionally deficient within the meaning of <u>Strickland</u> and that prejudice inured to him as a result of that deficient performance.  Accordingly, the Court finds that the state court's adjudication of the remaining portions of Petitioner's ineffective assistance of counsel claim did not contravene or unreasonably apply settled Supreme Court law.

Petitioner's ineffective assistance of counsel claim is dismissed in its entirety.[6]

**V.    Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed.  Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.  <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of</u>

---

[6]
Because Petitioner's ineffective assistance of counsel claim provides no basis for habeas relief and is dismissed in its entirety, Petitioner's request for a hearing, pursuant to <u>Sparman v. Edwards</u>, 154 F.3d 51 (2d Cir. 1998) (<u>see</u> Reply at 11), with respect to his ineffective assistance of counsel claim is also denied.

<u>Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000).   The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.   <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     September 13, 2011
           Rochester, New York

-28-